## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## ASHEVILLE DIVISION
## CIVIL ACTION NO.  1:13-CV-212-RLV-DCK

| | | |
|---|---|---|
| **KIMBERLY JONES,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **MEMORANDUM AND** |
| **v.** | ) | **RECOMMENDATION** |
| | ) | |
| **CAROLYN W. COLVIN,** | ) | |
| **Acting Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

**THIS MATTER IS BEFORE THE COURT** on Plaintiff's "Motion for Judgment on

the Pleadings" (Document No. 11) and "Defendant's Motion for Summary Judgment"

(Document No. 15).  This case has been referred to the undersigned Magistrate Judge pursuant to

28 U.S.C. §636(b)(1)(B).   After careful consideration of the written arguments, the

administrative record, and applicable authority, the undersigned will respectfully recommend

that Plaintiff's "Motion for Judgment on the Pleadings" be <u>denied</u>; that "Defendant's Motion for

Summary Judgment" be <u>granted</u>;  and that the Commissioner's decision be <u>affirmed</u>.

## I.       BACKGROUND

Plaintiff Kimberly Jones ("Plaintiff"), through counsel, seeks judicial review of an

unfavorable administrative decision on her application for disability benefits.  (Document No. 1).

On August 4, 2010, Plaintiff filed applications for a period of disability and disability insurance

benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. § 405, and for supplemental

security income under Title XVI of the Social Security Act, 42 U.S.C. § 1383, alleging an

inability to work due to a disabling condition beginning July 1, 2010.  (Transcript of the Record

of Proceedings ("Tr.") 29, 177-180, 181-189).   The Commissioner of Social Security (the

"Commissioner" or "Defendant") denied Plaintiff's application initially on or about September 2, 2010, and again after reconsideration on October 15, 2010. (Tr. 29, 121-125, 131-135). In its "Notice of Reconsideration," the Social Security Administration ("SSA") included the following explanation of its decision:

> The medical evidence shows that your condition is not severe enough to be considered disabling. You are able to think, act in your own interest, communicate, handle your own affairs, and adjust to ordinary emotional stresses without significant difficulties. Based on the description of the job performed as a licensed practical nurse, we have concluded that you have the functional capacity to meet the functional demands of this type of work. It has been decided, therefore, that you are not disabled according to the Social Security Act.

(Tr. 131).

Plaintiff filed a timely written request for a hearing on December 9, 2010. (Tr. 29, 139-140, 141-142). On June 8, 2011, Plaintiff appeared and testified at a hearing before Administrative Law Judge John S. Lamb ("ALJ"). (Tr. 29, 46-78). In addition, Kathleen H. Robbins, a vocational expert ("VE"), and Cynthia A. Strom, Plaintiff's attorney, appeared at the hearing. Id.

The ALJ issued an unfavorable decision on December 9, 2011, denying Plaintiff's claim. (Tr. 26-28, 29-39). Plaintiff filed a request for review of the ALJ's decision on January 21, 2012, which was denied by the Appeals Council on April 29, 2013. (Tr. 25, 5-8). The December 9, 2011 ALJ decision thus became the final decision of the Commissioner when the Appeals Council denied Plaintiff's review request. (Tr. 5). The Appeals Council noted that Plaintiff would need to apply again if she wanted the SSA to consider whether she was disabled after December 9, 2011. (Tr. 6).

Plaintiff's "Complaint" seeking a reversal of the ALJ's determination was filed in this Court on July 25, 2013. (Document No. 1). On September 17, 2013, the undersigned was assigned to this case as the referral magistrate judge (Document No. 10).

Plaintiff's "Motion for Judgment on the Pleadings" (Document No. 11) and "Plaintiff's Memorandum In Support Of Motion for Judgment on the Pleadings" (Document No. 12) were filed January 17, 2014; and "Defendant's Motion for Summary Judgment" (Document No. 15) and "Memorandum In Support Of Defendant's Motion for Summary Judgment" (Document No. 15-1) were filed April 23, 2014. The pending motions are ripe for disposition, and therefore, a memorandum and recommendation to the Honorable Richard L. Voorhees is now appropriate.

## II. STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision; and (2) whether the Commissioner applied the correct legal standards. Richardson v. Perales, 402 U.S. 389, 390 (1971); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

The Fourth Circuit has made clear that it is not for a reviewing court to re-weigh the evidence or to substitute its judgment for that of the Commissioner – so long as that decision is supported by substantial evidence. Hays, 907 F.2d at 1456 (4th Cir. 1990); see also, Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986); Hancock v. Astrue, 657 F.3d 470, 472 (4th Cir. 2012). "Substantial evidence has been defined as 'more than a scintilla and [it] must do more than create a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting Perales, 402 U.S. at 401).

Ultimately, it is the duty of the Commissioner, not the courts, to make findings of fact and to resolve conflicts in the evidence. Hays, 907 F.2d at 1456; King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979) ("This court does not find facts or try the case de novo when reviewing disability determinations."); Seacrist v. Weinberger, 538 F.2d 1054, 1056-57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistences in the medical evidence, and that it is the claimant who bears the risk of nonpersuasion."). Indeed, so long as the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the reviewing court disagrees with the final outcome. Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

## III. DISCUSSION

The question before the ALJ was whether Plaintiff was under a "disability" as that term of art is defined for Social Security purposes, at any time between July 1, 2010, and the date of his decision.[1] (Tr. 29). To establish entitlement to benefits, Plaintiff has the burden of proving that she was disabled within the meaning of the Social Security Act. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

The Social Security Administration has established a five-step sequential evaluation process for determining if a person is disabled. 20 C.F.R. § 404.1520(a). The five steps are:

> (1) whether claimant is engaged in substantial gainful activity - if yes, not disabled;

> (2) whether claimant has a severe medically determinable physical or mental impairment, or combination of

---

[1] Under the Social Security Act, 42 U.S.C. § 301, the term "disability" is defined as an: inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) (quoting 42 U.S.C. § 423(d)(1)(A)).

impairments that meet the duration requirement in §
404.1509 - if no, not disabled;

(3)     whether claimant has an impairment or combination of
impairments that meets or medically equals one of the
listings in appendix 1, and meets the duration requirement -
if yes, disabled;

(4)     whether claimant has the residual functional capacity
("RFC") to perform her/his past relevant work - if yes, not
disabled; and

(5)     whether considering claimant's RFC, age, education, and
work experience he/she can make an adjustment to other
work - if yes, not disabled.

20 C.F.R. § 404.1520(a)(4)(i-v).  In this case, the ALJ determined at the fifth step that Plaintiff

was not disabled.  (Tr. 37-38).

Specifically, the ALJ first concluded that Plaintiff had not engaged in any substantial

gainful activity since July 1, 2010, her alleged disability onset date.  (Tr. 31).  At the second step,

the ALJ found that spinal stenosis and degenerative disc disease status post cervical fusion and

discectomy;  spinal stenosis at L4-5 with L4 nerve root impingement;  osteoarthritis;

fibromyalgia;  Ehlers-Danos syndrome;  mood disorder;  anxiety disorder;  attention deficit

hyperactivity disorder;  and post-traumatic stress disorder were severe impairments. [2]  (Tr. 31).

At the third step, the ALJ determined that Plaintiff did not have an impairment or combination of

impairments that met or medically equaled one of the impairments listed in 20 C.F.R. 404,

Subpart P, Appendix 1.  (Tr. 32-33).

Next, the ALJ assessed Plaintiff's RFC and found that she retained the capacity to

perform light work activity, with the following limitations:

---

[2]  The determination at the second step as to whether an impairment is "severe" under the regulations
is a *de minimis* test, intended to weed out clearly unmeritorious claims at an early stage.  See Bowen v.
Yuckert, 482 U.S. 137 (1987).

I specifically find that the claimant has the light work capacity of lifting or carrying twenty pounds occasionally and ten pounds frequently and sitting for six of eight hours, standing for six of eight hours, and walking for six of eight hours. The claimant requires a sit-stand option. The claimant can never use a ladder, rope, or scaffold and can occasionally kneel, crawl, stoop, and bend. The claimant is limited to simple, routine, repetitive work and to low-stress work defined as only occasional changes in work settings or decision-making. In the alternative, I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a), with all other limitations as set forth above under the residual functional capacity for light work.

(Tr. 33-34). In making his finding, the ALJ specifically stated that he "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSRs 96-4p and 96-7p." (Tr. 34). The ALJ further opined that "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." Id.

At the fourth step, the ALJ found that Plaintiff could not perform her past relevant work as a medical assistant, phlebotomist, and general office clerk. (Tr. 37). At the fifth and final step, the ALJ concluded based on the testimony of the VE and "considering the claimant's age, education, work experience, and residual functional capacity" that jobs existed in significant numbers in the national economy that Plaintiff could perform. (Tr. 37). Specifically, the VE testified that according to the factors given by the ALJ, occupations claimant could perform included cashier and parking lot attendant. (Tr. 38-39). Therefore, the ALJ concluded that

Plaintiff was not under a "disability," as defined by the Social Security Act, at any time between July 1, 2010, and the date of his decision, December 9, 2011. (Tr. 38).

Plaintiff on appeal to this Court assigns error to the ALJ's evaluation of the medical evidence and the opinions of treating sources regarding Plaintiff's lumbar spinal stenosis. (Document No. 12, pp.1, 4).

## A. Medical Evidence

First, Plaintiff alleges that the ALJ erred in his analysis of the medical evidence with respect to Plaintiff's lumbar spinal stenosis.[3] (Document No. 12, p.5). Specifically, Plaintiff argues that the ALJ's assertions of inconsistencies to undermine Plaintiff's credibility regarding her pain and resultant limitations are "not supported by substantial evidence particularly where Ms. Jones' lumbar spinal stenosis is concerned." (Document No. 12, p.4) (citing Tr. 34-35). Plaintiff argues that the record reveals restricted range of motion, motor loss, and sensory deficits. (Document No. 12, p.5) (citing Tr. 707, 719). Plaintiff states that the record illustrates a "restricted lumbar ROM and objectively decreased sensory perception in her bilateral lower extremities in September 2011" and "reduced motor strength and sensory deficits in an L4 distribution corresponding to the pathology in her spine." (Document No. 12, p.5) (quoting Tr. 707, 719). Plaintiff contends that the above facts directly contradict those asserted by the ALJ when determining Plaintiff's credibility with respect to her low back and leg pain. (Document No. 12, p.5) (Tr. 35).

In her brief, Plaintiff subsequently critiques the ALJ's assessment of Plaintiff's credibility, although she does not directly assign error to the credibility determination. (Document No. 12, pp.4-6). She contends that the ALJ improperly weighed Plaintiff's

---

[3] The Court does not find Plaintiff's description of the ALJ's analysis as "slipshod" to be persuasive, accurate, or appropriate.

credibility when he concluded that the record did not support her testimony about increased sedimentation rates and fatigue. (Document No. pp.4-5). Plaintiff cites a slightly higher than normal sedimentation rate within the record. (Document No. 12, p.5) (citing Tr. 583). Additionally, Plaintiff argues that the ALJ incorrectly discounted her "significant and persistent fatigue" beginning in July 2010. (Document No. 12, p.5). Plaintiff identifies a number of instances in the record between July 2010 and October 2010 when she felt fatigued. (Document No. 12, p.5). In particular, Plaintiff cites to more than one occasion within the record where she felt she was "falling apart." (Document No. 12, p.5) (citing Tr. 485, 529).

Plaintiff further asserts that she "need not demonstrate neurological deficits in order for her complaints of pain to be found credible." (Document No. 12, p.5). Plaintiff argues that by producing "objective medical evidence of a condition that could reasonably be expected to produce her pain, she is then allowed to rely on [Dr. Loomis'] subjective descriptions of the pain and its intensity." (Document No. 12, p.6). Therefore, Plaintiff contends that Dr. Loomis' comments about the result of Plaintiff's myelogram and CT scan, in addition to comments recognizing her "severe degenerative disc disease at L4-5," support her allegations of pain. (Document 12, p.6) (citing Tr. 709, 690).

In response, Defendant contends that the ALJ properly weighed the credibility of Plaintiff's allegations regarding lumbar spinal stenosis against the evidence of record. (Document No. 15-1, pp.3-9). Defendant addresses Plaintiff's arguments with respect to the ALJ's analysis of the medical evidence regarding Plaintiff's lumbar spinal stenosis by clarifying the context of the quotations Plaintiff relies on in the record:

> . . . [T]he record from September 2011 indicated "somewhat" restricted lumbar range of motion of unspecified degree, with normal gait, negative nerve root tension signs while seated, and normal strength in motor groups (Tr. 707). Though sensation was

decreased over the anterior shins and "somewhat" over the dorsum of her feet, knee and ankle reflexes remained at 2+ and equal (Tr. 707). In the record from October 2011, while motor power of the lower extremities was slightly reduced, it remained 4+/5, and while bilateral L4 hypalgesia and hypesthesias were noticed (which the ALJ acknowledged, *see* Tr. 35), knee and ankle reflexes remained 2+ and equal (Tr. 719). This argument also does not address other notations of normal range of motion, normal strength, and intact sensation (Tr. 327, 352, 355, 359, 364, 386, 477, 579, 602, 605, 611), or address generally findings of negative straight leg raising (Tr. 386, 477, 579, 603, 611, 613), or normal gait (Tr. 312, 359, 386, 390, 443, 477, 503, 603, 605, 608, 611, 613, 693, 707).

(Document No. 15-1, pp.6-7). Defendant asserts that two records indicative of "abnormal findings" do not alter the fact that substantial evidence supports the ALJ's opinion. (Document No. 15-1, p.7).

Defendant also addresses Plaintiff's subsequent arguments focused on the ALJ's analysis of Plaintiff's credibility. (Document No. 15-1, pp.5-9). Defendant acknowledges the elevated sedimentation rate in the record, but notes it is the only showing of an elevated rate, while a number of other places in the record demonstrate a normal sedimentation rate. (Document No. 15-1, p.5) (compare Tr. 583, with Tr. 323, 341, 345, 363, 392, 395, 417, 436, 440). Additionally, Defendant expressly recognizes evidence in which Plaintiff stated she felt fatigued. (Document No. 15-1, pp.5-6). Defendant asserts that the ALJ cited a report in the record dated three weeks prior to the first record containing Plaintiff's comments about "falling apart." (Document 15-1, p.6). However, Defendant contends that these incidents do not show "that the ALJ's finding her complaints of fatigue are not fully credible is unsupported by substantial evidence." (Document No. 15-1, p.6). Defendant notes that "Dr. Ghaussy recommended good sleep habits also exercise as ameliorative measures." (Document No. 15-1, p.6) (citing Tr. 722). The undersigned observes that the ALJ specifically noted Plaintiff's history of joint pain and fatigue associated

with fibromyalgia and Ehlers-Danos syndrome – and found these conditions to be "severe" impairments. (Tr. 34) (citing Tr. 528-538, 687-688).

Finally, Defendant addresses Plaintiff's allegations that the ALJ improperly weighed her subjective descriptions of pain when determining her credibility. (Document No. 15-1, pp.7-8). Defendant acknowledges that Plaintiff's argument relies on a two-part standard described in Hines v. Barnhart – regarding the treatment of subjective and objective evidence. (Document No. 15-1, p.7) (citing Hines v. Barnhart, 453 F.3d 559, 565 n.3 (4th Cir. 2006)). According to Hines, if Plaintiff establishes the existence of an impairment that could reasonably be expected to cause the pain through "medically acceptable objective evidence," then subjective evidence presented by Plaintiff can be used to support a finding of disability. Hines, 453 F.3d at 564.

Here, Plaintiff appears to appropriately cite Hyatt v. Sullivan for the proposition that objective evidence is not required at part two to support subjective evidence. (Document No. 12, p.6) (citing generally Hyatt v. Sullivan, 899 F.2d 329 (4th Cir. 1990). However, Defendant points out that Hines clarifies that although objective evidence at part two of the standard is not required, it can still affect the weight given to Plaintiff's subjective evidence. (Document No. 15-1, p.7) (citing Hines, 453 F.3d at 565 n.3). Defendant also rejects Plaintiff's suggestion that it is sufficient to determine Plaintiff's allegations are "fully credible," based on the likelihood the impairment could account for Plaintiff's alleged pain. (Document No. 15-1, p.9) (citing Document No. 12, p.8).

Despite Plaintiff's assertions to the contrary, Defendant concludes that the evidence supports the ALJ's findings with respect to Plaintiff's lumbar spine condition, including her allegations of pain. (Document No. 15-1, p.9). Based on the foregoing, the undersigned is persuaded that the ALJ relied on substantial evidence in his analysis of the medical records.

**B.     Opinion Evidence**

Plaintiff also alleges that the ALJ improperly evaluated the medical opinions of Najeeb Ghaussy, M.D., Plaintiff's treating rheumatologist and Ralph C. Loomis, M.D., the treating specialist in spinal neurology.  (Document No. 12, p.6).

Plaintiff states that the ALJ's reasons for discounting Dr. Ghaussy's opinion "make little sense." (Document No. 12, p.7).  Plaintiff claims that the ALJ did not address the reasons Dr. Ghaussy cited for considering Plaintiff disabled or his findings in his "Medical Assessment Of Ability To Do Work." (Document No. 12, pp.6-7) (citing Tr. 703-705, 721-722).[4]  Specifically, Plaintiff notes Dr. Ghaussy opined that Plaintiff suffers pain and fatigue from severe fibromyalgia, osteoarthritis of the back, and Ehlers-Danos syndrome.  (Document 12, p.6) (citing Tr. 703).

Plaintiff further asserts that the ALJ erred in his failure to mention Dr. Loomis' comments that Plaintiff's bilateral neuroforaminal stenosis at L4-5 impinging upon the L4 nerve roots would account for Plaintiff's pain in her left and right thighs.  (Document No. 12, p.6) (citing Tr. 709).

Finally, Plaintiff argues that the ALJ "engage[d] in lay interpretation of raw medical data which is not permitted – an ALJ cannot substitute his own lay opinion for those of professional sources." (Document No. 12, p.8).  Therefore, Plaintiff concludes that the ALJ's determination on whether Plaintiff suffers from disabling pain stemmed from conjecture rather than medical evidence.  (Document No. 12, p.8).

Defendant notes that the ALJ did consider Dr. Ghaussy's opinion, but found that it was inconsistent with other medical evidence of normal gait, normal neurological observations, and

---

[4] It appears that Plaintiff intended to cite pp. 704-706 of the Transcript for the information regarding Dr. Ghaussy's Medical Assessment of Ability to do Work.

only minimal degeneration of the knees bilaterally. (Document No. 15-1, p.10) (citing Tr. 36).

Defendant addresses Plaintiff's claim at length with regards to the ALJ's consideration of the

reasons Dr. Ghaussy cited for considering Plaintiff disabled:

> Specifically, Plaintiff suggests that the ALJ's reasons did not address the basis Dr. Ghaussy cited for his opinion, which was pain and fatigue from arthritis, fibromyalgia, and EDS (P. Br. At 7; Tr. 703-706). However, while degeneration of the bilateral knees is not directly germane to the bases Dr. Ghaussy cited for his opinion, a normal gait and normal neurological findings are in fact directly related to a back impairment, as Plaintiff implicitly acknowledges in her attempt to argue that neurological findings supported the severity [of] that impairment (*see* P.Br. at 5). The ALJ also properly considered Plaintiff's normal gait as inconsistent with the standing and walking limitations opined by Dr. Ghaussy (Tr. 36). Dr. Ghaussy's opinion is further weakened by the fact that it does not elaborate as to rationale on the mechanism of impairment behind these conditions; rather, it only cites the conditions themselves, and pain and fatigue generally, without explaining how these conditions produced each limitation (*see* Tr. 703-706). The opinion thus had little in the way of specific rationale for the ALJ to address. Moreover, Dr. Ghaussy's medical source statement is equivocal in several respects, with question marks and notations of "unsure" underscoring the opinion's uncertainty (*see* Tr. 704-706). In sum, Plaintiff has not demonstrated that the ALJ should have given this opinion greater weight, and substantial evidence supports the ALJ's weighing of his opinion.

(Document No. 15-1, p.11).

Similarly, Defendant argues that the ALJ did in fact consider Dr. Loomis' opinion.

(Document 15-1, p.8). Defendant notes that the ALJ specifically referenced Dr. Loomis' opinion

regarding bilateral stenosis at L4-5 with L4 nerve root impingement. (Document No. 15-1, p.8)

(citing Tr. 35). "The ALJ did not find that Plaintiff suffered no pain; rather, the ALJ found that

Plaintiff's was 'not limited *to the extent alleged* by back pain.'" (Document No. 15-1, p.8) (citing

Tr. 35). Defendant further demonstrates that joint consideration of Dr. Ghaussy and Dr. Loomis'

opinions does not bolster Dr. Ghaussy's opinion. (Document No. 15-1, p.10). Dr. Loomis'

opinion did not include an opinion on Plaintiff's functional restrictions or any general comments regarding Plaintiff's pain being debilitating. (Document No. 15-1, p.10).

As Defendant's brief asserts, the ALJ did in fact rely on a medical opinion when determining whether Plaintiff suffers from disabling pain. (Document No. 15-1, pp.11-12). Rather than completely relying on Dr. Ghaussy's opinion, the ALJ also considered the opinion of Dr. Coin, Plaintiff's treating source. (Document No. 15-1, pp.11-12) (citing Tr. 617-619). While Defendant notes that the ALJ "did not fully credit this opinion . . . it serves as the underlying basis for his RFC finding." (Document No. 15-1, p.12) (citing Tr. 36).

Based on the foregoing, the undersigned is not persuaded that the ALJ improperly evaluated the medical opinion of Dr. Ghaussy in this case. Moreover, contrary to Plaintiff's assertions that the ALJ failed to mention or consider Dr. Loomis' opinion, the decision shows that the ALJ directly cited Dr. Loomis' records. See Tr. 35 (citing Tr. 709, 477). Plaintiff's arguments that the ALJ failed to take account of the medical opinions, offered no significant reasoning for the amount of weight given to the opinions, and that the ALJ engaged in impermissible interpretation of raw medical data are without merit.

## IV.    CONCLUSION

In short, it appears Plaintiff suggests that the Court re-weigh the evidence to find that Plaintiff's spinal stenosis is disabling, rather than severe as determined by the ALJ. It is not for this Court to re-weigh the evidence. The undersigned finds that there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," and thus substantial evidence supports the Commissioner's decision. Richardson v. Perales, 402 U.S. 389, 401 (1971); Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005). As such, the undersigned will recommend that the Commissioner's decision be affirmed.

## V. RECOMMENDATION

**FOR THE FOREGOING REASONS,** the undersigned respectfully recommends that: Plaintiff's "Motion for Judgment on the Pleadings" (Document No. 11) be **DENIED**; "Defendant's Motion for Summary Judgment" (Document No. 15) be **GRANTED;** and the Commissioner's determination be **AFFIRMED**.

## VI. TIME FOR OBJECTIONS

The parties are hereby advised that pursuant to 28 U.S.C. § 636(b)(1)(C), and Rule 72 of the Federal Rules of Civil Procedure, written objections to the proposed findings of fact, conclusions of law, and recommendation contained herein may be filed **within fourteen (14) days** of service of same. Responses to objections may be filed within fourteen (14) days after service of the objections. Fed.R.Civ.P. 72(b)(2). Failure to file objections to this Memorandum and Recommendation with the District Court constitutes a waiver of the right to de novo review by the District Court. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005). Moreover, failure to file timely objections will preclude the parties from raising such objections on appeal. Diamond, 416 F.3d at 316; Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003); Snyder v. Ridenhour, 889 F.2d 1363, 1365 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 147-48 (1985), reh'g denied, 474 U.S. 1111 (1986).

**IT IS SO RECOMMENDED**.

Signed: June 6, 2014

David C. Keesler
United States Magistrate Judge

14